UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

SHARON ELFRINK,                          )
                                         )
            Plaintiff,                   )
                                         )
    vs.                                  )      Case No. 4:21 CV 310 ACL
                                         )
KILOLO KIJAKAZI,                         )
Acting Commissioner of Social Security   )
Administration,                          )
                                         )
            Defendant.                   )

## MEMORANDUM

Plaintiff Sharon Elfrink brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Social Security Administration Commissioner's denial of her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act.

An Administrative Law Judge ("ALJ") found that, despite Elfrink's severe impairments, she was not disabled as she had the residual functional capacity ("RFC") to perform past relevant work.

This matter is pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c).   A summary of the entire record is presented in the parties' briefs and is repeated here only to the extent necessary.

For the following reasons, the decision of the Commissioner will be affirmed.

### I.  Procedural History

Elfrink filed her application for DIB on June 12, 2018.   (Tr. 167.)   She claimed she became unable to work on April 1, 2018, due to rheumatoid arthritis, osteoarthritis, depression,

anxiety, unhealed left foot fracture, ulcers, and pain.   (Tr. 215.)   Elfrink was 58 years of age at

her alleged onset of disability date.   Her application was denied initially.   (Tr. 102.)   Elfrink's

claim was denied by an ALJ on August 27, 2020.   (Tr. 10-23.)   On January 15, 2021, the

Appeals Council denied Elfrink's claim for review.   (Tr. 1-4.)   Thus, the decision of the ALJ

stands as the final decision of the Commissioner.   *See* 20 C.F.R. §§ 404.981, 416.1481.

In this action, Elfrink first argues that the ALJ "failed to properly evaluate the RFC," in

that she failed to analyze the severity of Elfrink's unhealed fracture of the fifth metatarsal of the

left foot.   (Doc. 18 at 3.)   She next argues that the ALJ "failed to properly evaluate opinion

evidence."   *Id.* at 5.

## II.  The ALJ's Determination

The ALJ first found that Elfrink met the insured status requirements of the Social

Security Act through December 31, 2022.   (Tr. 12.)   She stated that Elfrink has not engaged in

substantial gainful activity since her alleged onset of disability date.   (Tr. 13.)   In addition, the

ALJ concluded that Elfrink had the following severe impairments: rheumatoid arthritis and

osteoarthritis in both knees.   *Id.*   The ALJ found that Elfrink did not have an impairment or

combination of impairments that met or medically equaled the severity of one of the listed

impairments.   (Tr. 15.)

As to Elfrink's RFC, the ALJ stated:

> After careful consideration of the entire record, the undersigned
> finds that the claimant has the residual functional capacity to
> perform medium work as defined in 20 CFR 404.1567(c) except
> she is able to lift, carry, push and/or pull 50 pounds occasionally
> and 25 pounds frequently.   She is able to stand and/or walk 6
> hours in an 8 hour workday.   The claimant is able to sit 6 hours in
> an 8 hour workday.   She is able to occasionally climb ropes,
> ladders, scaffolds, ramps and stairs.   The claimant is able to

frequently balance (as defined in the DOT/SCO as walking, crouching, or running on narrow, slippery or erratically moving surfaces).   She is able to frequently stoop, kneel and crouch, and only occasionally crawl.

(Tr. 15-16.)

The ALJ found that Elfrink was able to perform her past relevant work as a job coach and interior designer.   (Tr. 21.)   The ALJ therefore concluded that Elfrink was not under a disability, as defined in the Social Security Act, from April 1, 2018, through the date of the decision.   (Tr. 23.)

The ALJ's final decision reads as follows:

Based on the application for a period of disability and disability insurance benefits protectively filed on June 12, 2018, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act.

(Tr. 23.)

### III.   Applicable Law

### III.A.   Standard of Review

The decision of the Commissioner must be affirmed if it is supported by substantial evidence on the record as a whole.   42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002).   Substantial evidence is less than a preponderance of the evidence, but enough that a reasonable person would find it adequate to support the conclusion.   *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001).   This "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the Commissioner's findings."   *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (internal quotation marks and citation omitted).   "Substantial evidence on the record as a

whole . . . requires a more scrutinizing analysis." *Id.* (internal quotation marks and citations omitted).

To determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole, the Court must review the entire administrative record and consider:

1.   The credibility findings made by the ALJ.

2.   The plaintiff's vocational factors.

3.   The medical evidence from treating and consulting physicians.

4.   The plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments.

5.   Any corroboration by third parties of the plaintiff's impairments.

6.   The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairment.

*Stewart v. Secretary of Health & Human Servs.,* 957 F.2d 581, 585-86 (8th Cir. 1992) (internal citations omitted).   The Court must also consider any evidence which fairly detracts from the Commissioner's decision.   *Coleman*, 498 F.3d at 770; *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999).   However, even though two inconsistent conclusions may be drawn from the evidence, the Commissioner's findings may still be supported by substantial evidence on the record as a whole.   *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) (citing *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000)).   "[I]f there is substantial evidence on the record as a whole, we must affirm the administrative decision, even if the record could also have supported an opposite decision."   *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992) (internal

quotation marks and citation omitted); s*ee also Jones ex rel. Morris v. Barnhart*, 315 F.3d 974, 977 (8th Cir. 2003).   Put another way, a court should "disturb the ALJ's decision only if it falls outside the available zone of choice."   *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015) (citation omitted).

### III.B.  Determination of Disability

A disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months.   42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 416.905.   A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education and work experience engage in any kind of substantial gainful work which exists … in significant numbers in the region where such individual lives or in several regions of the country."   42 U.S.C. § 1382c(a)(3)(B).   Elfrink challenges the ALJ's findings as to her left foot fracture.   She does not challenge ALJ's finding regarding her mental impairments.

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations.   20 C.F.R. § 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007).   First, the Commissioner will consider a claimant's work activity.   If the claimant is engaged in substantial gainful activity, then the claimant is not disabled.   20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the

claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 343 F.3d 602, 605 (8th Cir. 2003).   "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b).   These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, reaching out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id*. § 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987).   "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on his ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment.   If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience.   20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work.   20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(4).   "RFC is a

medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or his physical or mental limitations." *Elfrink v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see* 20 C.F.R. § 416.945(a)(1).   The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources."   20 C.F.R. § 416.945(a)(3).   The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations.   *See id*.   If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled.   *Id*. § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his age, education, and work experience.   *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n. 5 (8th Cir. 2000).   The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy.   *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 416.920(a)(4)(v).   If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled.   If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled.   20 C.F.R. § 416.920(a)(4)(v).   At Step Five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability

remains on the claimant.   *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

## IV.   Discussion

As previously noted, Elfrink raises two claims.   The undersigned will discuss them in turn, beginning with the ALJ's evaluation of Elfrink's left foot fracture.

### 1.   Severity of Left Foot Fracture

Elfrink first argues that the ALJ erred in failing to find her unhealed fracture of the fifth metatarsal of the left foot was a severe impairment.

At Step 2, the Commissioner must determine whether a claimant has a severe impairment.   20 C.F.R. § 404.1520(c).   A severe impairment is "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities."   20 C.F.R. § 404.1521.   Basic work activities include the "abilities and aptitudes" necessary to do most jobs including walking, standing, sitting, lifting, pushing, pulling, reaching, or carrying.   20 C.F.R. § 404.1522.   Although this standard is neither onerous nor "toothless," the plaintiff bears the burden of establishing the severity of an impairment.   20 C.F.R. 404.1521.   *See Kirby,* 500 F.3d at 707.   "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on her ability to work."   *Page,* 484 F.3d at 1043.

The ALJ found that Elfrink's rheumatoid arthritis and osteoarthritis in both knees were severe impairments at step two.[1]   (Tr. 13.)   The medical evidence reveals Elfrink was also diagnosed with and treated for a left foot fracture.   The ALJ, however, never made an explicit

---

[1]The undersigned notes that, although Elfrink alleged mental impairments in addition to her physical impairments, she does not challenge the ALJ's finding that her mental impairments were non-severe.   As such, the Court's discussion will focus on Elfrink's physical impairments.

finding of whether Elfrink's left foot fracture was severe, non-severe, or not medically determinable.

"Where an ALJ errs by failing to find an impairment to be severe, such error is harmless if the ALJ finds the claimant to suffer from another severe impairment, continues in the evaluation process, and considers the effects of the impairment at the other steps of the process." *DeGroot v. Berryhill*, 1:17-CV-202 ACL, 2019 WL 1316964 at *7 (E.D. Mo. March 22, 2019); *see also Weed v. Saul*, 4:18-CV-1192 SPM, 2019 WL 4451259 at *4 (E.D. Mo. Sept. 17, 2019); *Coleman v. Astrue*, 4:11-CV-2131 CDP, 2013 WL 665084 at *10 (E.D. Mo. Feb. 25, 2013); *Vancil v. Saul*, 4:18-CV-55 NAB, 2019 WL 4750443, at *3 (E.D. Mo. Sept. 20, 2019).

Despite the ALJ's failure to make an explicit finding regarding the status of Elfrink's left foot fracture, the alleged error was harmless.   As discussed in greater detail below, the ALJ's decision as a whole demonstrates that the ALJ considered the evidence of Elfrink's left foot fracture diagnosis and treatment, treated the impairment as non-severe, and considered it in determining Elfrink's RFC.   The ALJ discussed this impairment extensively when summarizing the medical evidence (Tr. 17-19) at step four, as set out below:

On December 13, 2017, Elfrink presented to Larkin T. Wadsworth, M.D., with complaints of left ankle and foot pain and swelling after falling the previous night.   (Tr. 392.) She reported she was standing in the kitchen when she pivoted, felt her leg give out, and heard a cracking sound.   (Tr. 392.)   Elfrink was wearing a post-operative shoe due to the swelling and pain.   *Id.*   On examination, Dr. Wadsworth noted edema and discoloration of the skin at the lateral aspect of the left foot, point tenderness at the fifth metatarsal base, limited range of motion of the ankle, some tenderness of the ankle, markedly antalgic gait favoring the left, and normal neurovascular exam and alignment.   (Tr. 395-96.)   X-rays of the left ankle and foot

revealed a nondisplaced fracture of the fifth metatarsal.   (Tr. 396.)   Dr. Wadsworth diagnosed

Elfrink with a sprain of the left ankle, closed nondisplaced fracture of the fifth metatarsal bone of

the left foot, tobacco abuse disorder, and age-related osteoporosis.   *Id.*   He placed Elfrink in a

short cam walker fracture brace to immobilize her ankle and foot; prescribed a limited supply of

pain medication; strongly advised her to quit smoking while her fracture heals; and discussed ice,

elevation, and activity modification to decrease her pain and enhance fracture healing.   *Id.*

Elfrink returned for follow-up on January 8, 2018, at which time she reported that she was doing

better.   (Tr. 18, 407.)   She admitted that she does not wear her boot around the house and

notices her pain is worse when not wearing it.   *Id.*   Elfrink was able to walk short distances

around the house with no issues, and had only needed to take her prescription pain medication

the first few days wearing the boot.   (Tr. 407.)   Upon examination, Dr. Wadsworth noted

Elfrink's edema and discoloration at the lateral aspect of the foot was nearly resolved; point

tenderness remained at the fifth metatarsal base; and her range of motion had improved.   (Tr.

410.)   Dr. Wadsworth indicated that Elfrink may continue to gradually wean herself from use of

the walker.   (Tr. 411.)   He noted that Elfrink spends most of the day on her feet, and that it was

a stable fracture.   *Id.*   On January 26, 2018, Elfrink reported that she was doing "pretty well."

(Tr. 18, 415.)   She was not wearing her boot, but reported that she wears it "when walking long

distances, going shopping, or working."   *Id.*   Elfrink reported bilateral heel pain and was noted

to have a history of plantar fasciitis and foot surgery a few years prior.   *Id.*   On examination,

Dr. Wadsworth noted that the edema and discoloration of the lateral aspect of the foot had

resolved, point tenderness remained at the fifth metatarsal base, range of motion had improved at

the ankle, and her heel cords were very tight.   (Tr. 418.)   Dr. Wadsworth referred Elfrink to

physical therapy for rehabilitation of her ankle fracture as well as treatment of her plantar

fasciitis.   (Tr. 419.)   On February 23, 2018, Elfrink complained of left ankle tenderness and soreness due to physical therapy.   (Tr. 18, 420.)   Dr. Wadsworth noted Elfrink had less tenderness at the fifth metatarsal base.   (Tr. 423.)   He prescribed a brace to help with ambulation and soreness, and advised her to wear the brace when walking.   (Tr. 424.)   Dr. Wadsworth advised Elfrink to start with walking no more than a half mile, and gradually build up as tolerated.   *Id.*   On March 23, 2018, Elfrink reported she was doing well, but still experiences tenderness to the touch and a little instability when walking on uneven surfaces. (Tr. 18, 429.)   She had no swelling.   (Tr. 429, 432.)   Dr. Wadsworth stated that Elfrink has improved, but still has some deficits residual from her left foot and ankle injuries.   (Tr. 433.) He again encouraged her to quit smoking to promote her fracture healing, and indicated that she should be ready for discharge from physical therapy in two months.   *Id.*   On May 4, 2018, Dr. Wadsworth indicated that Elfrink had misunderstood his instructions and did not go back to physical therapy as he recommended.   (Tr. 18, 439.)   She reported increased soreness associated with walking, and pain at the fifth metatarsal base that radiates across the dorsum of the lateral midfoot.   *Id.*   Upon examination, Elfrink had no edema, tenderness at the fifth metatarsal base, improved ankle range of motion, intact tendon function, intact neurovascular exam, excellent eversion strength and no pain with eversion strength testing, no tenderness of the ankle joint, normal alignment, no instability, normal range of motion, no joint crepitation, and no pain on motion or resisted motion.   (Tr. 442.)   X-rays revealed a delayed union of the fifth metatarsal bone fracture.   (Tr. 443.)   Dr. Wadsworth ordered a bone stimulator and instructed Elfrink to continue her independent exercise program.   *Id.*   He also wrote a note for Elfrink's work, indicating that she is unable to stand for more than three hours a day.   *Id.*   On June 22, 2018, Elfrink reported no improvement with use of the bone stimulator at home.   (Tr. 18, 444.)

She was not doing any of her exercises.   *Id.*   On examination, Elfrink was no longer tender at the ankle joint and she had excellent eversion strength.   (Tr. 447.)   Dr. Wadsworth instructed Elfrink to resume therapeutic exercise, and ordered an MRI of the left foot.   (Tr. 448.)   On July 14, 2018, Elfrink underwent an MRI of the left ankle, which revealed an oblique intra-articular fracture of the left fifth metatarsal base with mild adjacent soft tissue edema, but otherwise the foot was normal.   (Tr. 449.)   At Elfrink's July 17, 2018 follow-up, Dr. Wadsworth strongly encouraged Elfrink to stop smoking, and instructed her to resume use of the bone stimulator. (Tr. 18, 454.)   He discussed referring Elfrink to an orthopedist for a consultation, but she declined the referral.   *Id.*   On September 7, 2018, Elfrink complained of pain and swelling after falling backwards and landing on her left side, knee, and wrist.   (Tr. 18, 467.)   She also reported some neck and right trap pain after helping her son move and doing a lot of lifting.   (Tr. 467.)   On examination of Elfrink's left lower extremity, Dr. Wadsworth noted that Elfrink was no longer wearing the boot, had a mildly antalgic gait favoring the left, the edema in her foot remained improved, there was less tenderness at the fifth metatarsal base, and her range of motion had further improved at the ankle.   (Tr. 470.)   Elfrink underwent a consultative internal medicine examination on October 5, 2018, performed by Deborah Wagner, PA-C.   (Tr. 18, 490-93.)   Elfrink reported that she feels pain in her left fifth metatarsal on a daily basis, but she is able to wear all of her shoes.   (Tr. 491.)   She indicated that she was told she has a nonunion because of her continued cigarette smoking.   (Tr. 490-91.)   On examination, she was able to walk on her toes and heels, and reported mild pain to palpation over the fifth metatarsal.   (Tr. 493.)

After summarizing this medical evidence, in addition to evidence regarding Elfrink's rheumatoid arthritis, the ALJ concluded that the medical findings did not include "significant

deficits in strength, neurological function, range of motion, posture, sensation, reflexes, pulses or gait, lasting twelve months in duration." (Tr. 20.) She further stated that no physician noted significant deficits in Elfrink's abilities to squat, stand, walk, sit, lift, carry, bend or stoop, lasting twelve months in duration; and there was no medical evidence that Elfrink was prescribed or determined to require the prolonged use of an assistance device for ambulation for twelve consecutive months. *Id.* These findings are supported by the medical evidence discussed above. The evidence demonstrates that Elfrink sustained a fracture to her left foot in December 2017, approximately four months prior to her alleged onset of disability date. Treatment notes reveal Elfrink's left foot fracture continued to improve on examination. By March 23, 2018, approximately two weeks *before* Elfrink's alleged onset of disability, Dr. Wadsworth found the edema in her lateral foot had resolved, her range of motion at the ankle had improved, there was no instability, she had normal range of motion, no joint crepitation, and no pain on motion or resisted motion. (Tr. 432.) Elfrink received no more treatment for her left ankle impairment after her September 2018 visit with Dr. Wadsworth, at which time the examination findings were essentially normal. (Tr. 470.) As such, the evidence does not support the presence of an impairment impacting Elfrink's ability to perform basic work activities for the twelve-month durational period.

The ALJ also discussed Elfrink's statements regarding her left foot fracture and her daily activities. (Tr. 17.) Specifically, Elfrink testified at the administrative hearing that she was working part-time in a medium exertional-level position as a job coach for persons with disabilities. (Tr. 17, 34-37.) Elfrink testified that she lifted up to fifty pounds at this position, and she worked just under the substantial gainful activity earnings level. *Id.* Work activity can detract from a claimant's credibility. *See* 20 C.F.R. §§ 404.1571, 416.971 (past work may

show ability to work at the substantial gainful activity level); *Goff v. Barnhart,* 421 F.3d 785, 792 (8th Cir. 2005) (inconsistencies between subjective complaints and work and daily activities diminished claimant's credibility); *Harris v. Barnhart,* 356 F.3d 926, 930 (8th Cir. 2004) ("It was...not unreasonable for the ALJ to note that [the claimant's] daily activities, including part-time work,...were inconsistent with her claim of disabling pain.").

Further, at the administrative hearing, Elfrink admitted that her foot fracture had not fully healed because she continued to smoke.   (Tr. 38.)   She stated that her primary care physician "always says everything is due to my smoking," and that "he's a strong advocate for me to quit smoking."  *Id.*   The ALJ properly noted that Elfrink's foot fracture was slow to heal due to her ongoing smoking contrary to medical advice.   "[A]n ALJ may properly consider the claimant's noncompliance with a treating physician's directions, ... including failing to take prescription medications, ... seek treatment, ... and quit smoking."  *Choate v. Barnhart*, 457 F.3d 865, 872 (8th Cir. 2006).

Additionally, Elfrink's attorney represented at the hearing that her left foot impairment was "not the primary impairment that's limiting her," and that it was her rheumatoid arthritis that was her most limiting impairment.   (Doc. 39.)

In summary, the medical evidence and other evidence in the record regarding the diagnosis and treatment of Elfrink's physical impairments took into account all of her conditions, including her left foot fracture.   As such, even though the ALJ did not explicitly state that she was considering Elfrink's left foot fracture in rendering her decision, the ALJ's extensive citation to and reliance upon evidence regarding her left foot impairment supports a finding that the ALJ considered this condition in rendering her decision.   Thus, any alleged error by the ALJ in failing to find that Elfrink's left foot fracture was a severe impairment was harmless.

### 2.   Opinion Evidence and RFC

Elfrink next argues that the ALJ failed to properly evaluate the opinion evidence in determining her RFC.   Specifically, she contends that the ALJ failed to properly consider the opinion of treating rheumatologist Dr. Ying Du that she was limited to less than sedentary work; and the opinion of the St. Louis Medical Clinic that she was limited to standing no more than three hours a day.

A claimant's RFC is the most she can do despite her physical or mental limitations. *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004).   It is the ALJ's responsibility to determine a claimant's RFC by evaluating all medical and non-medical evidence of record.   20 C.F.R. §§ 404.1545, 404.1546, 416.945, 416.946.   Some medical evidence must support the ALJ's RFC finding, but there is no requirement that the evidence take the form of a specific medical opinion from a claimant's physician.   *Myers v. Colvin*, 721 F.3d 521, 526-27 (8th Cir. 2013); *Perks v. Astrue*, 687 F.3d 1086, 1092-93 (8th Cir. 2012); *Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011).   "The determination of a claimant's RFC during an administrative hearing is the ALJ's sole responsibility and is distinct from a medical source's opinion."   *Wallenbrock v. Saul*, No. 4:20-CV-00182-SRC, 2021 WL 1143908, at *6 (E.D. Mo. Mar. 25, 2021) (citing *Kamann v. Colvin*, 721 F.3d 945, 950-51 (8th Cir. 2013)).

The ALJ found that Elfrink had the RFC to perform medium work, except she could only occasionally climb ropes, ladders, scaffolds, ramps, and stairs; occasionally crawl; and frequently balance, stoop, kneel, and crouch.   (Tr. 15-16.)   In making this determination, the ALJ evaluated the medical opinion evidence.

A "medical opinion" is a statement from a medical source about what an individual can still do despite her impairments, and includes limitations or restrictions about the ability to

perform physical, mental, sensory, and/or environmental demands of work.   20 C.F.R. §§
404.1513(a)(2), 416.913(a)(2).   Under the revised Social Security regulations,[2] the agency
"[w]ill not defer or give any specific evidentiary weight, including controlling weight, to any
medical opinion(s) or prior administrative medical finding(s), including those from [the
claimant's] medical sources."   20 C.F.R. §§ 404.1520c(a), 416.920c(b)(2).   Instead, the ALJ
must assess the persuasiveness of all medical opinions and prior administrative medical findings
using a number of factors, including 1) the supportability of the opinion with objective medical
evidence and explanations; 2) the consistency of the opinion with evidence from other medical
and nonmedical sources; 3) the relationship of the provider to the claimant, including the length,
nature and frequency of treatment; 4) the specialization of the provider; and 5) other factors,
including the source's familiarity with the Social Security guidelines.   *See* 20 C.F.R. §
404.1520c.   The ALJ must explain how she considered the factors of supportability and
consistency in her decisions but are not statutorily required to discuss the other factors.   20
C.F.R. § 404.1520c(b)(2).

Elfrink underwent a rheumatology consultation by Ying Du, M.D., of St. Louis Medical
Clinic on April 27, 2018, after being diagnosed with rheumatoid arthritis the previous year.   (Tr.
18, 434.)   She complained of achiness in her right leg, sore hands, sore neck, joint pain, and
right shoulder pain and stiffness.   (Tr. 434.)   She was taking Plaquenil[3] and needed a refill.   *Id.*
On examination, Dr. Du noted Elfrink's right knee was mildly swollen and she had pain in her
right shoulder with abduction.   (Tr. 435.)   He continued Elfrink's Plaquenil.   *Id.*   On October

---

[2]The new regulations are applicable to Elfrink's claims because she filed her appeal after March
27, 2017.   *See* 20 C.F.R. §§ 404.1520c, 416.920c.

[3]Plaquenil is indicated for the treatment of auto-immune diseases including lupus and rheumatoid
arthritis.   *See* WebMD, http://www.webmd.com/drugs (last visited August 30, 2022).

2, 2018, Elfrink reported pain in her right shoulder, left hip, and right wrist.   (Tr. 18, 481.)   She indicated that she had lowered her dosage of Plaquenil due to hair loss.   (Tr. 481.)   Dr. Du noted that her hair looked thin on exam.   (Tr. 482.)   He assessed Elfrink with mildly symptomatic rheumatoid arthritis, and prescribed medication for her hair loss.   (Tr. 483.) Elfrink saw Dr. Du for follow-up on December 10, 2018, at which time she complained of joint pain.   (Tr. 19, 505.)   On examination, Dr. Du noted no abnormalities other than tenderness at the fifth metatarsal base.   (Tr. 508.)   Elfrink had normal strength and sensation, a normal gait, she was able to stand without difficulty, and her postural alignment was unremarkable.   (Tr. 509.)   Dr. Wu counseled Elfrink to stop smoking and exercise regularly.   *Id.*   On August 23, 2019, Elfrink complained of right shoulder and right thumb pain.   (Tr. 19, 534.)   Dr. Wu noted a positive impingement sign in the right shoulder and mild synovitis in her right wrist.   (Tr. 535.)   Elfrink declined stronger medication.   *Id.*   Dr. Wu continued the Plaquenil.   *Id.*   On March 3, 2020*,* Elfrink complained of pain in her right wrist, right hand, and feet after cleaning shutters.   (Tr. 19, 545.)   Her right hand and wrist were tender, but not swollen, on examination. (Tr. 546.)   On March 11, 2020, Elfrink indicated that she was applying for disability and needed a form filled out.   (Tr. 19, 548.)   She reported that she was working fifteen to eighteen hours a week teaching job skills.   *Id.*   Dr. Du again noted right wrist and hand tenderness on exam. (Tr. 549.)

On March 11, 2020, Dr. Du completed a medical source statement in which he indicated he had been treating Elfrink every three months since April 2018 for a diagnosis of rheumatoid arthritis.   (Tr. 19, 538.)   Dr. Du identified Elfrink's symptoms as fatigue, weakness, unstable walking, increased muscle tension/spasm, impaired sleep, pain, poor coordination, crepitus, swelling, balance problems, and depression.   (Tr. 538.)   He expressed the opinion that Elfrink

could sit and stand/walk a total of less than two hours in an eight-hour workday; needs periods of
walking around during the work day and the ability to shift at will from sitting, standing, or
walking; needs to take unscheduled breaks every hour and a half for fifteen to twenty minutes;
can lift up to ten pounds occasionally; can occasionally twist and climb stairs and finger; can
never stoop/bend, crouch, climb ladders, reach, or handle; her experience of pain interferes with
attention and concentration constantly; is likely to have good days and bad days; would be off
task more than twenty percent of the time; and would be absent from work more than three times
a month.   (Tr. 538-39.)   Dr. Du stated that Elfrink would have difficulty working a full-time job
on a sustained basis because she has "severe joint pain and stiffness due to rheumatoid arthritis."
(Tr. 539.)   As support for these findings, he stated Elfrink has "joint tenderness, joint swelling
and decreased range of motion."   *Id.*

The ALJ found that Dr. Du's opinion was not persuasive, because it was "inconsistent
with the record as a whole, particularly Dr. Du's findings within his own treatment records."
(Tr. 20.)   The ALJ explained that Elfrink routinely had essentially normal examination findings,
with no significant finings of edema, skin changes, joint deformities, sensation loss, atrophy, or
other neurological deficits noted.   *Id.*   Some tenderness was noted, but her range of motion was
normal, and she had no difficulties with fine or gross manipulation.   *Id.*   The ALJ pointed out
that Elfrink did not use an assistive device when walking and she reported she was able to walk
in regular shoes, including heels.   *Id.*   The ALJ referred to two different physical therapy
treatment notes from March 2018, in which she reported she was able to wear heels without
increased pain.   (Tr. 333, 327)   On one of those visits, Elfrink reported she was able to wear
wedge shoes and dance with her granddaughter over the weekend without significant difficulty.
(Tr. 327.)   The ALJ next stated that Dr. Du's opinion was not consistent with Elfrink's reported

ability to work at the medium exertional level with earnings just below the level of substantial gainful activity.  *Id.*  She noted that Elfrink also reported helping her son move in September 2018, which was consistent with at least medium work.  (Tr. 20, 467.)  The ALJ found that these activities were "wholly inconsistent with the manipulative as well as the exertional limitations suggested by Dr. Du."  (Tr. 20.)

The ALJ adequately explained why she found Dr. Du's opinions unpersuasive.  As required by the applicable regulations, the ALJ explained how she considered the supportability and consistency factors.  The ALJ pointed to specific findings on examination that were not supportive of Dr. Du's opinion.  She also discussed Elfrink's activities that were inconsistent with Dr. Du's opinion.  Notably, Elfrink fails to point to a specific error.  She merely argues that the ALJ "failed to properly consider the opinion of Dr. Du…that the Plaintiff would have a RFC for less than sedentary work."  (Doc. 18 at 5.)  Elfrink's argument lacks merit.

The ALJ next discussed the opinion of state agency medical consultant Renu Debroy, M.D.  (Tr. 20.)  Dr. Debroy completed a Physical Residual Functional Capacity Assessment on December 19, 2018.  (Tr. 93-95.)  Dr. Debroy expressed the opinion that Elfrink could occasionally lift fifty pounds and frequently lift twenty-five pounds; stand or walk six hours in an eight-hour workday and sit a total of six hours in an eight-hour workday; could never climb ladders, ropes, or scaffolds; and could occasionally climb ramps or stairs, and crawl.  (Tr. 93.)

The ALJ found that Dr. Debroy's opinion was "generally persuasive" because he had an opportunity to review the medical and non-medical evidence, and his findings of limitations were consistent with the record as a whole.  (Tr. 20.)  She continued that, "more critically, this opinion appears to be consistent with the claimant's work and non-work activities, as noted above."  *Id.*

Elfrink argues that the ALJ "failed to properly consider" the opinion of the St. Louis Medical Clinic that Elfrink would be limited to standing no more than three hours a day.   *Id.* The opinion to which Elfrink refers is a work note authored by Dr. Wadsworth in May 2018, in which he checks a box indicating Elfrink "is unable to stand for more than three hours per day." (Tr. 530, 443.)

The ALJ acknowledged Dr. Wadsworth's work note when summarizing the medical evidence, but did not specifically address it as a medical opinion.   (Tr. 19.)   Elfrink fails to establish error in the ALJ's consideration of Dr. Wadsworth's work note.

On the day Dr. Wadsworth authored the work note, Elfrink had reported increased left foot pain associated with walking, and had not gone to physical therapy as recommended.   (Doc. 439.)   On examination, Dr. Wadsworth found that the edema in Elfrink's left lateral foot had resolved, although there was still some tenderness at the fifth metatarsal base; and her range of motion had improved at the ankle.   (Tr. 442.)   Dr. Wadsworth's subsequent treatment notes continued to note improvement in Elfrink's left foot fracture, as previously discussed.   There is no indication that Dr. Wadsworth intended the work note to be a permanent restriction. Notably, it was authored in May 2018, just one month after Elfrink's alleged onset of disability. As discussed by the ALJ, the objective medical evidence from the relevant period of April 2018 through August 2020 revealed few abnormalities on examination and reflected continued improvement.   Further, Elfrink's admitted activities of working at a medium exertional job, wearing heels without issue, dancing with her granddaughter, and helping her son move are consistent with the ability to perform medium work.

The ALJ's RFC determination that Elfrink remains capable of performing a range of medium work is supported by the record as a whole.   It is consistent with the opinion of the state

agency medical consultant, as well as the treatment notes of Elfrink's various providers, which document few abnormalities other than occasional lower extremity swelling and tenderness. The ALJ's determination is also supported by Elfrink's ability to work a medium exertional level position during the relevant period at just under the substantial gainful activity earnings level. Elfrink has failed to demonstrate that the ALJ's decision was outside the available "zone of choice."

Accordingly, Judgment will be entered separately in favor of Defendant in accordance with this Memorandum.

/s/ *Abbie Crites-Leoni*
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 20th day of September, 2022.